**REQUIRED STATEMENT**
**TO ACCOMPANY MOTIONS FOR RELIEF FROM STAY**

All Cases: Debtor(s) __Jacob G. Arzer and Jessica R. Arzer__ Case No. __16-30883__ Chapter __13__

All Cases: Moving Creditor __Madrona Village Homeowners Association__ Date Case Filed __9/28/2016__

Nature of Relief Sought: ☑ Lift Stay    ☐ Annul Stay    ☐ Other (describe) _____

Chapter 13: Date of Confirmation Hearing _____ or Date Plan Confirmed __2/03/2017__

Chapter 7: ☐ No-Asset Report Filed on _____
            ☐ No-Asset Report not Filed, Date of Creditors Meeting _____

1. Collateral
   a. ☑ Home
   b. ☐ Car   Year, Make, and Model _____
   c. ☐ Other (describe) _____

2. Balance Owed as of Petition Date   $ __772.17__
   Total of all other Liens against Collateral $ __Unknown__

3. In chapter 13 cases, if a post-petition default is asserted in the motion, attach a payment history listing the amounts and dates of all payments received from the debtor(s) post-petition.

4. Estimated Value of Collateral (must be supplied in *all* cases)   $ __215,000.00__

5. Default
   a. ☐ Pre-Petition Default
        Number of months ____   Amount $ _____
   b. ☑ Post-Petition Default
        i. ☑ On direct payments to the moving creditor
           Number of months ____   Amount $ __729.18__   + accruing assessments, charges, attorney's fees, and costs.
        ii. ☐ On payments to the Standing Chapter 13 Trustee
            Number of months ____   Amount $ _____

6. Other Allegations
   a. ☑ Lack of Adequate Protection § 362(d)(1)
        i.   ☐ No insurance
        ii.  ☐ Taxes unpaid   Amount $ _____
        iii. ☐ Rapidly depreciating asset
        iv.  ☑ Other (describe) __Accruing lien for unpaid association assessments__

   b. ☑ No Equity and not Necessary for an Effective Reorganization § 362(d)(2)

   c. ☑ Other "Cause" § 362(d)(1)
        i.   ☐ Bad Faith (describe) _____
        ii.  ☐ Multiple Filings
        iii. ☑ Other (describe) __Default under Movant's Declarations__

   d. Debtor's Statement of Intention regarding the Collateral
      i. ☐ Reaffirm   ii ☐ Redeem   iii. ☐ Surrender   iv. ☑ No Statement of Intention Filed

Date: __May 16, 2019__                       _____
                                              Counsel for Movant

(Rev. 12/21/09)

05/14/2019 10:46 AM  Page: 1

The Madrona Village Homeowners Association
Dates 11/01/2014 to 05/14/2019

C1-0000 Madrona Village
Round Lake IL 60073

McGill Management, Inc.
1314 N. Rand Road
Arlington Hts IL 60004

| Unit | Space | Resident | Type | Date | CC | Description | Check | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| H097 | 02 | Jacob Arzer FC BK* | App# | 42240 | | | Beg Bal | | 0.00 |
| | | Jessica Arzer FC BK | Chg | 11/01/2014 | CS | October Quarterly | | 81.68 | 81.68 |
| | | 97 W. Hampton Ct. | Chg | 01/01/2015 | QA | Quarterly Assessment | | 81.68 | 163.36 |
| | | Round Lake IL 60073 | Chg | 01/31/2015 | LF | Late Fee | | 25.00 | 188.36 |
| | | | Chg | 04/01/2015 | QA | Quarterly Assessment | | 81.68 | 270.04 |
| | | 97 W. Hampton Ct. | Chg | 04/30/2015 | LF | Late Fee | | 25.00 | 295.04 |
| | | Round Lake IL 60073 | Chg | 07/01/2015 | QA | Quarterly Assessment | | 81.68 | 376.72 |
| | | | Chg | 07/31/2015 | LF | Late Fee | | 25.00 | 401.72 |
| | | | Chg | 08/04/2015 | lc | Legal Fee | | 192.82 | 594.54 |
| | | | Chg | 10/01/2015 | QA | Quarterly Assessment | | 81.68 | 676.22 |
| | | | Chg | 10/06/2015 | lc | Legal Fee | | 458.00 | 1,134.22 |
| | | | Pay | 10/06/2015 | | Atty ck9168226585 | | -1,184.22 | -50.00 |
| | | | Chg | 11/04/2015 | lc | Legal Fee | | 50.00 | 0.00 |
| | | | Chg | 01/01/2016 | QA | Quarterly Assessment | | 89.03 | 89.03 |
| | | | Chg | 01/31/2016 | LF | Late Fee | | 25.00 | 114.03 |
| | | | Chg | 04/01/2016 | QA | Quarterly Assessment | | 89.03 | 203.06 |
| | | | Chg | 04/30/2016 | LF | Late Fee | | 25.00 | 228.06 |
| | | | Chg | 07/01/2016 | QA | Quarterly Assessment | | 89.03 | 317.09 |
| | | | Chg | 07/31/2016 | LF | Late Fee | | 25.00 | 342.09 |
| | | | Chg | 09/07/2016 | LC | Legal Inv.60638/8.31 | | 192.58 | 534.67 |
| | | | Chg | 10/01/2016 | QA | Quarterly Assessment | | 89.03 | 623.70 |
| | | | Cr | 10/01/2016 | CS | Pre-petition | | -534.67 | 89.03 |
| | | | Chg | 11/03/2016 | LC | Legal Inv.63157 | | 237.50 | 326.53 |
| | | | Chg | 01/01/2017 | QA | Quarterly Assessment | | 89.03 | 415.56 |
| | | | Chg | 01/31/2017 | LF | Late Fee | | 25.00 | 440.56 |
| | | | Cr | 03/30/2017 | LC | Moved to BK 00 | | -237.50 | 203.06 |
| | | | Pay | 03/31/2017 | | Lckbx Pmt | 236719 | -203.06 | 0.00 |
| | | | Chg | 04/01/2017 | QA | Quarterly Assessment | | 89.03 | 89.03 |
| | | | Chg | 04/30/2017 | LF | Late Fee | | 25.00 | 114.03 |
| | | | Chg | 07/01/2017 | QA | Quarterly Assessment | | 89.03 | 203.06 |
| | | | Pay | 07/07/2017 | | Lckbx Pmt | 913040 | -203.06 | 0.00 |
| | | | Chg | 10/01/2017 | QA | Quarterly Assessment | | 89.03 | 89.03 |
| | | | Chg | 10/31/2017 | LF | Late Fee | | 25.00 | 114.03 |
| | | | Pay | 12/29/2017 | | Lckbx Pmt | 038333 | -114.03 | 0.00 |
| | | | Chg | 01/01/2018 | QA | Quarterly Assessment | | 89.03 | 89.03 |
| | | | Chg | 01/31/2018 | LF | Late Fee | | 25.00 | 114.03 |
| | | | Chg | 04/01/2018 | QA | Quarterly Assessment | | 89.03 | 203.06 |
| | | | Chg | 04/30/2018 | LF | Late Fee | | 25.00 | 228.06 |
| | | | Chg | 07/01/2018 | QA | Quarterly Assessment | | 89.03 | 317.09 |
| | | | Chg | 07/31/2018 | LF | Late Fee | | 25.00 | 342.09 |
| | | | Pay | 09/18/2018 | | Lckbx Pmt | 159452 | -342.09 | 0.00 |
| | | | Chg | 09/25/2018 | NS | NSF Fee | | 45.00 | 45.00 |
| | | | Rev | 09/25/2018 | | NSF | 159452 | 342.09 | 387.09 |
| | | | Chg | 10/01/2018 | QA | Quarterly Assessment | | 89.03 | 476.12 |
| | | | Chg | 10/31/2018 | LF | Late Fee | | 25.00 | 501.12 |
| | | | Chg | 01/01/2019 | QA | Quarterly Assessment | | 89.03 | 590.15 |
| | | | Chg | 01/31/2019 | LF | Late Fee | | 25.00 | 615.15 |
| | | | Chg | 04/01/2019 | QA | Quarterly Assessment | | 89.03 | 704.18 |
| | | | Chg | 04/30/2019 | LF | Late Fee | | 25.00 | 729.18 |
| | | | | | | | End Bal | | 729.18 |

*[handwritten]* 5-16-19 BK Legal Fee  881.00  1,610.18

Case 16-30883   Doc 45-2   Filed 05/16/19   Entered 05/16/19 12:24:18   Desc
Statement Accompanying Relief From Stay   Page 3 of 8

(Page 1 of 41)

THIS INSTRUMENT PREPARED
BY AND SHOULD BE RETURNED
TO:

Brian Meltzer
MELTZER, PURTILL & STELLE
1515 East Woodfield Road
Suite 250
Schaumburg, Illinois 60173-5431
(847) 330-2400

**TICOR**

190332

30034\030\0001.511

4811940
Filed for Record in:
LAKE COUNTY, IL
MARY ELLEN VANDERVENTER - RECORDER
On Nov 28 2001
At 4:08pm
Receipt #: 318802
Doc/Type: DCL
Deputy - Cashier #1

ABOVE SPACE FOR RECORDER'S USE ONLY

11/02/01

# DECLARATION FOR MADRONA VILLAGE

## TABLE OF CONTENTS

ARTICLE ONE      Definitions ......................................................................................................... 1

1.01 ASSESSMENT POINTS ................................................................................................. 2
1.02 ASSOCIATION ............................................................................................................... 2
1.03 ASSOCIATION MAINTAINED ROW ............................................................................ 2
1.04 BOARD ............................................................................................................................ 2
1.05 BY-LAWS ........................................................................................................................ 2
1.06 CHARGES ....................................................................................................................... 2
1.07 COMMUNITY AREA ..................................................................................................... 2
1.08 COMMUNITY ASSESSMENT ....................................................................................... 2
1.09 COMMUNITY EXPENSES ............................................................................................ 2
1.10 CONCORD AFFILIATE ................................................................................................. 3
1.11 CONDOMINIUM UNIT .................................................................................................. 3
1.12 COUNTY ......................................................................................................................... 3
1.13 DECLARANT .................................................................................................................. 3
1.14 DECLARANT'S DEVELOPMENT PLAN ..................................................................... 3
1.15 DECLARATION .............................................................................................................. 3
1.16 DETACHED HOME ....................................................................................................... 3
1.17 DETACHED HOME LOT ............................................................................................... 3
1.18 DEVELOPMENT AREA ................................................................................................. 3
1.19 DUPLEX HOME ............................................................................................................. 3
1.20 DUPLEX LOT ................................................................................................................. 4
1.21 DWELLING UNIT .......................................................................................................... 4
1.22 MORTGAGEE ................................................................................................................ 4
1.23 MUNICIPALITY ............................................................................................................. 4
1.24 NON-OWNER ................................................................................................................. 4
1.25 OWNER ........................................................................................................................... 4
1.26 PERSON .......................................................................................................................... 4



1 of 41

Case 16-30883   Doc 45-2   Filed 05/16/19   Entered 05/16/19 12:24:18   Desc
Statement Accompanying Relief From Stay    Page 4 of 8

(Page 15 of 41)

the Declarant (which may be exercised at any time prior to the Turnover Date) or at the option of the members of the Association (which may be exercised by action of the members after the Turnover Date), the Association shall be dissolved and liquidated and thereafter, subject to the provisions of Section 15.02, the provisions of this Declaration which deal with the powers and duties of the Association shall be null and void and of no further force and effect. Any distribution of assets of the Association shall be made to the Owners of Dwelling Units and Unbuilt Dwelling Units in the same proportions as assessments are then payable hereunder or, if required by the Municipality, shall be paid to the Municipality for use by it to pay the costs of maintaining, repairing or replacing the Community Area conveyed to it.

ARTICLE SIX
Assessments

6.01 PURPOSE OF ASSESSMENTS: The assessments levied by the Association shall be limited to the purposes of maintaining the Community Area, administering the affairs of the Association, paying the Community Expenses, and accumulating reserves for any such expenses.

6.02 COMMUNITY ASSESSMENT: Each year on or before December 1, the Board shall adopt and furnish each Owner with a budget for the ensuing calendar year, which shall show the following with reasonable explanations and itemizations:

(1) The estimated Community Expenses;

(2) The estimated amount, if any, to maintain adequate reserves for Community Expenses including, without limitation, amounts to maintain the Capital Reserve;

(3) The estimated net available cash receipts from sources other than assessments, plus estimated excess funds, if any, from the current year's assessments;

(4) The amount of the "Community Assessment" payable by the Owners, which is hereby defined as the amount determined in (1) above, plus the amount determined in (2) above, minus the amount determined in (3) above;

(5) That portion of the Community Assessment which shall be payable with respect to the ensuing calendar year by the Owner of each Dwelling Unit and each Unbuilt Dwelling Unit which is subject to assessment hereunder, which shall be equal to the Community Assessment multiplied by a fraction, the numerator of which shall be the Assessment Points assigned to the Dwelling Unit or Unbuilt Dwelling Unit in question and the denominator of which shall be the total number of Assessment Points assigned to all Dwelling Units and Unbuilt Dwelling Units then subject to assessment hereunder.

Anything herein to the contrary notwithstanding the following provisions shall apply with respect to the period prior to the Turnover Date. Any budget ("Built Out Budget") prepared and Community Assessments determined thereunder by the Board prior to the Turnover Date shall be based on the assumptions that (i) the Development has been fully constructed in accordance with

11

4811940

Case 16-30883   Doc 45-2   Filed 05/16/19   Entered 05/16/19 12:24:18   Desc
Statement Accompanying Relief From Stay   Page 5 of 8

(Page 16 of 41)

Declarant's Development Plan and (ii) all proposed dwelling units have been constructed in accordance with Declarant's Development Plan, are sold and are occupied. Prior to the Turnover Date, each Owner of a Dwelling Unit or Unbuilt Dwelling Unit (other than the Declarant or a Concord Affiliate) shall pay as the Owner's share of the Community Assessment each year the amount determined under (5) above pursuant to the Built Out Budget for such year. Neither Declarant nor any Concord Affiliate shall be obligated to pay any Community Assessments to the Association with respect to the period prior to the Turnover Date. However, if with respect to the period commencing on the date of the Recording of this Declaration and ending on the Turnover Date, the amount of Community Assessments and working capital payments under Section 6.07 payable by Owners (other than Declarant or a Concord Affiliate) less the portions thereof which are to be added to Reserves is less than the Community Expenses actually incurred with respect to such period, then the Declarant shall pay the difference to the Association. From time to time prior to the Turnover Date, the Declarant shall deposit with the Association amounts which reasonably approximate Declarant's obligation hereunder, as estimated by the Declarant. A final accounting and settlement of the amount, if any, owed by Declarant to the Association or vice versa shall be made as soon as practicable after the Turnover Date.

6.03 <u>PAYMENT OF COMMUNITY ASSESSMENT</u>: Each Owner of a Dwelling Unit or Unbuilt Dwelling Unit which is subject to assessment shall pay to the Association, or as the Board may direct, that portion of the Community Assessment which is payable by each Owner of a Dwelling Unit or Unbuilt Dwelling Unit under Section 6.02, at such times as the Board shall determine from time to time.

6.04 <u>REVISED ASSESSMENT</u>: If after the Turnover Date the Community Assessment proves inadequate for any reason (including nonpayment of any Owner's assessment) or proves to exceed funds reasonably needed, then the Board may increase or decrease the assessment payable under Section 6.02 by giving written notice thereof (together with a revised budget and explanation for the adjustment) to each Owner not less than ten (10) days prior to the effective date of the revised assessment.

6.05 <u>SPECIAL ASSESSMENT</u>: The Board may levy a special assessment as provided in this Section (i) to pay (or build up reserves to pay) expenses other than Community Expenses incurred (or to be incurred) by the Association from time to time for a specific purpose including, without limitation, to make alterations, additions or improvements to the Community Area, Association Maintained ROW, or any other property owned or maintained by the Association; or (ii) to cover an unanticipated deficit under the prior year's budget (but only for periods after the Turnover Date). Any special assessment shall be levied against all of Dwelling Units and Unbuilt Dwelling Units in using the procedure provided for in Section 6.02. No special assessment shall be adopted without the affirmative vote of Voting Members representing at least two-thirds (2/3) of the votes cast on the question. The Board shall serve notice of a special assessment on all Owners by a statement in writing giving the specific purpose and reasons therefor in reasonable detail, and the special assessment shall be payable in such manner and on such terms as shall be fixed by the Board. Any assessments collected pursuant to this Section (other than those to cover an unanticipated deficit under the prior year's budget) shall be

Case 16-30883    Doc 45-2    Filed 05/16/19    Entered 05/16/19 12:24:18    Desc
Statement Accompanying Relief From Stay    Page 6 of 8

(Page 17 of 41)

segregated in a special account and used only for the specific purpose set forth in the notice of assessment.

6.06 CAPITAL RESERVE: The Association shall segregate and maintain special reserve accounts to be used solely for making capital expenditures in connection with the Community Area (the "Capital Reserve"). The Board shall determine the appropriate level of the Capital Reserve based on a periodic review of the useful life of improvements to the Community Area, Association Maintained ROW and other property owned or maintained by the Association and periodic projections of the cost of anticipated major repairs or replacements to such property and the purchase of other property to be used by the Association in connection with its duties hereunder. Each budget shall disclose that percentage of the Community Assessment which shall be added to the Capital Reserve and each Owner shall be deemed to make a capital contribution to the Association equal to such percentages multiplied by each installment of the Community Assessment paid by such Owner.

6.07 INITIAL CONTRIBUTION/ADVANCE PAYMENT OF ASSESSMENT: Upon the closing of the first sale of a Dwelling Unit or an Unbuilt Dwelling Unit by the Declarant or a Concord Affiliate to a purchaser for value, the purchasing Owner (a) shall pay to the Association in an amount equal to the annual Community Assessment at the rate which shall become effective with respect to the Dwelling Unit or Unbuilt Dwelling Unit as of the closing and (b) unless otherwise agreed by Declarant, each purchaser of an Unbuilt Dwelling Unit shall make an advance payment of one year's assessments at the rate which shall become effective with respect to the Dwelling Unit or Unbuilt Dwelling Unit as of the closing; provided, that this sentence shall not apply to the sale of a Dwelling Unit or Unbuilt Dwelling Unit to a Concord Affiliate by Declarant or another Concord Affiliate. The payment made pursuant to (a) above shall be held and used by the Association for its working capital needs. Any advance assessment payment made hereunder shall be applied as an advance payment of assessments with respect to such period; however, if assessments increase during such period the Owner of the Dwelling Unit or Unbuilt Dwelling Unit shall be required to pay the amount of the increase.

6.08 PAYMENT OF ASSESSMENTS: Assessments levied by the Association shall be collected from each Owner by the Association and shall be a lien on the Owner's Dwelling Unit or Unbuilt Dwelling Unit and also shall be a personal obligation of the Owner in favor of the Association, all as more fully set forth in Article Seven.

### ARTICLE SEVEN
### Collection of Charges and Remedies for Breach or Violation

7.01 CREATION OF LIEN AND PERSONAL OBLIGATION: The Declarant hereby covenants, and each Owner of a Dwelling Unit or Unbuilt Dwelling Unit by acceptance of a deed therefor (whether or not it shall be so expressed in any such deed or other conveyance), shall be and is deemed to covenant and hereby agrees to pay to the Association all Charges made with respect to the Owner on the Owner's Dwelling Unit and/or Unbuilt Dwelling Units, as applicable. Each Charge, together with interest thereon and reasonable costs of collection, if any, as hereinafter provided, shall be a continuing lien upon the Dwelling Unit or Unbuilt Area against

13

4811940    17

Case 16-30883    Doc 45-2    Filed 05/16/19    Entered 05/16/19 12:24:18    Desc
Statement Accompanying Relief From Stay    Page 7 of 8

(Page 18 of 41)

which such Charge is made and also shall be the personal obligation of the Owner of the Dwelling Unit or Unbuilt Dwelling Unit at the time when the Charge becomes due. The lien or personal obligation created under this Section shall be in favor of and shall be enforceable by the Association.

7.02 COLLECTION OF CHARGES: The Association shall collect from each Owner all Charges payable by such Owner under this Declaration.

7.03 NON-PAYMENT OF CHARGES: Any Charge which is not paid to the Association when due shall be deemed delinquent. Any Charge which is delinquent for thirty (30) days or more shall bear interest at the rate of eighteen percent (18%) per annum or the maximum rate permitted by law, whichever is less, from the due date to the date when paid. The Association may (i) bring an action against the Owner personally obligated to pay the Charge to recover the Charge (together with interest, costs and reasonable attorney's fees for any such action, which shall be added to the amount of the Charge and included in any judgment rendered in such action), and (ii) enforce and foreclose any lien which it has or which may exist for its benefit. In addition, the Board may add a reasonable late fee to any installment of an assessment which is not paid within thirty (30) days of its due date. No Owner may waive or otherwise escape personal liability for the Charges hereunder by nonuse of the Community Area or by abandonment or transfer of his Dwelling Unit or portion of the Premises which includes Unbuilt Dwelling Units.

7.04 LIEN FOR CHARGES SUBORDINATED TO MORTGAGES: The lien for Charges, provided for in Section 7.01, shall be subordinate to the Mortgagee's mortgage on the Dwelling Unit or Unbuilt Dwelling Unit which was Recorded prior to the date that any such Charge became due. Except as hereinafter provided, the lien for Charges, provided for in Section 7.01, shall not be affected by any sale or transfer of a Dwelling Unit or Unbuilt Dwelling Unit. Where title to a Dwelling Unit or Unbuilt Dwelling Unit is transferred pursuant to a decree of foreclosure of the Mortgagee's mortgage or by deed or assignment in lieu of foreclosure of the Mortgagee's mortgage, such transfer of title shall extinguish the lien for unpaid Charges which became due prior to the date of the transfer of title. However, the transferee of the Dwelling Unit or Unbuilt Dwelling Unit shall be personally liable for his share of the Charges with respect to which a lien against his Dwelling Unit or Unbuilt Dwelling Unit has been extinguished pursuant to the preceding sentence where such Charges are reallocated among all the Owners pursuant to a subsequently adopted annual or revised Community Assessment or special assessment, and non-payment thereof shall result in a lien against the transferee's Dwelling Unit, as provided in this Article.

7.05 SELF-HELP BY BOARD: In the event of a violation or breach by an Owner of the provisions, covenants or restrictions of the Declaration, the By-Laws, or rules or regulations of the Board, where such violation or breach may be cured or abated by affirmative action, then the Board, upon not less than ten (10) days' prior written notice to the Owner, shall have the right to enter upon that part of the Premises where the violation or breach exists to remove or rectify the violation or breach; provided, that, if the violation or breach exists within a Dwelling Unit,

14

4811940

/8

judicial proceedings must be instituted before any items of construction can be altered or demolished.

7.06 OTHER REMEDIES OF THE BOARD: In addition to or in conjunction with the remedies set forth above, to enforce any of the provisions contained in this Declaration or any rules and regulations adopted hereunder the Board may levy a fine or the Board may bring an action at law or in equity by the Association against any person or persons violating or attempting to violate any such provision, either to restrain such violation, require performance thereof, to recover sums due or payable or to recover damages or fines, and against the land to enforce any lien created hereunder; and failure by the Association or any Owner to enforce any provision shall in no event be deemed a waiver of the right to do so thereafter.

7.07 COSTS AND EXPENSES: All costs and expenses incurred by the Board in connection with any action, proceedings or self-help in connection with exercise of its rights and remedies under this Article, including, without limitation, court costs, attorneys' fees and all other fees and expenses, and all damages, liquidated or otherwise, together with interest thereon at the rate of eighteen percent (18%) per annum or the maximum rate permitted by law, whichever is less, until paid, shall be charged to and assessed against the defaulting Owner, and the Association shall have a lien for all the same, upon his Dwelling Unit or Unbuilt Dwelling Unit as provided in Section 7.01.

7.08 ENFORCEMENT BY OWNERS: Enforcement of the provisions contained in this Declaration and the rules and regulations adopted hereunder may be by any proceeding at law or in equity by any aggrieved Owner against any person or persons violating or attempting to violate any such provisions, either to restrain such violation or to recover damages, and against a Dwelling Unit or Unbuilt Dwelling Unit to enforce any lien created hereunder.

## ARTICLE EIGHT
### Restrictions

8.01 RESTRICTIONS: No industry, business, trade, occupation or profession of any kind shall be conducted, maintained or permitted on any part of the Community Area. Each Dwelling Unit shall be used only for residential purposes, as a private residence, and no professional, business or commercial use shall be made of the same or any portion thereof, nor shall any resident's use of a Dwelling endanger the health or disturb the reasonable enjoyment of any other Owner or Resident, except that professional and quasi-professional persons may use their Dwelling Unit as an ancillary or secondary facility to an office elsewhere. The foregoing restrictions as to residence shall not, however, be construed in such manner as to prohibit a resident from: (a) maintaining his personal professional library; (b) keeping his personal business or professional records or accounts; or (c) handling his personal business or professional telephone calls or correspondence. Such uses are expressly declared customarily incident to the principal residential use and not in violation of said restrictions.

8.02 SIGNS: Subject to the provisions of Article Nine, no sign of any kind shall be maintained or permitted on any part of the Premises, except as permitted by the Board.